[L. A. No. 12718. In Bank.—June 19, 1931.]

LOUIS F. D'ELIA, Jr., Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Cooper & Collings for Petitioner.

Bauer, Macdonald, Schultheis & Pettit and Philbrick McCoy for Respondent.

THE COURT.—This proceeding was brought to review the proceedings and the recommendation of the Board of Governors of The State Bar that the petitioner in one matter be suspended from the practice of the law in this state for a period of one year, and in another matter that he receive a reprimand for conduct reprehensible and unbecoming a member of the bar of this state.

At the time of the hearings before the local administrative committee of Los Angeles County the petitioner had practiced law in the city of Los Angeles for a period of six years. On November 14, 1929, in a proceeding instituted before The State Bar, he was served with an order to show cause "why he should not be censured, punished or disbarred in connection with the circulation of a certain circular letter reflecting upon the conduct of the Honorable Walton J. Wood". Hearings were had in that matter on December 10, 1929; January 7, 21, 28, and February 4, 1930, before the committee, which thereafter made its findings and its recommendation to the Board of Governors that a reprimand be administered to the petitioner in said matter.

On February 8, 1930, the petitioner was served with a notice and copy of a complaint filed against him by one Martin Rudsit for whom the petitioner had performed legal services. The petitioner filed an answer and hearings were had before the committee on March 4, 11 and 18, 1930. The record discloses in substance the following evidence in support of the allegations of the complaint:

Rudsit went to the petitioner's office for the first time on October 22, 1928, having been referred to petitioner by a fellow attorney to seek petitioner's advice with reference to initiating steps to set aside an interlocutory decree of divorce which had been obtained against Rudsit by his wife. The conceded agreement was that the petitioner would move on Rudsit's behalf and as his attorney to set aside the interlocutory decree of divorce on grounds based on facts

related to him by Rudsit for a fee of $100. Rudsit thereupon paid to the petitioner $20 on account of the fee for which he was given a receipt by the petitioner. On October 27th, at the petitioner's request by telephone the previous day, Rudsit again visited the petitioner's office. The petitioner asked for his fee, to which Rudsit replied that he did not then have the money to pay him. The petitioner told Rudsit that he had funds in two different banks. Upon being asked by Rudsit how he discovered that, the petitioner replied that he had found out everything. Rudsit informed the petitioner that those funds were tied up by a restraining order obtained by his wife in the divorce action. The petitioner replied that he could obtain a release of the funds and handed Rudsit a paper to sign, which Rudsit, who was foreign-born and could read and write English with difficulty, did not read, nor did the petitioner read it to him. Rudsit testified that the petitioner said that the paper stated merely that the petitioner represented Rudsit as his attorney and that it was necessary for him to have it in order to obtain a release of the funds from the restraining order, and that nothing was said about additional attorney's fees. The instrument which in fact Rudsit signed was construed by the committee and is conceded by the petitioner to be an assignment of the funds of Rudsit on deposit at one of the banks amounting to $517, and which the petitioner withdrew shortly thereafter. On several occasions subsequently Rudsit asked the petitioner concerning the release of his money, to which he received the reply at one time that the petitioner was too busy and that he would have to straighten out the matter and go to court in order to obtain the release; at another time that the wife's attorney was holding it up; and again that the money could not be released until the case was terminated, that it had been "transferred to State Bank under court order and bonded". The motion to set aside the interlocutory decree of divorce was made on November 18th and denied.

At some point during the proceedings it appeared to the petitioner that it might become necessary to enter a contest of the matter on the ground that the decree was obtained by extrinsic fraud or that further steps might be advisable in the nature of an appeal from the order denying the motion or in the nature of a criminal prosecution. When Rudsit was apprised of this and of the fact that it would

cost him additional attorney's fees, he told the petitioner that he did not care to proceed any further. Subsequently Rudsit and his wife became reconciled.

In all, up to and including November 14, 1928, Rudsit made payments totaling $60 on account of the $100 fee, for which he held receipts signed by the petitioner, although he received no receipt for the sum of $517. On November 19th Rudsit discovered through the bank that the money had been withdrawn by the petitioner. Rudsit testified that he made repeated demands upon the petitioner for the return to him of the funds withdrawn. It is in evidence that the petitioner, subsequent to November 19th, made three small payments totaling $12 to Rudsit upon the occasions when he was pressed by Rudsit for payment of the funds.

By his answer and by his testimony the petitioner attempted to establish that at the time Rudsit gave him the assignment the petitioner had informed Rudsit of the necessity of contesting the entire divorce proceedings and that Rudsit had authorized him to proceed and had given him the assignment for the purpose of paying the additional fee which would be required, and that Rudsit would also pay the balance of the $100 fee originally agreed upon. The small payments totaling $12 were testified by him to have been made to Rudsit as charitable donations because of Rudsit's pleas that he had no money to buy food. The petitioner admits that he did not do the extra work for which by his testimony the funds assigned were to be retained by him, with the exception that he did some preparatory research and made some notes on the matter involving the question of extrinsic fraud; but he contends that the $517 was received as a fee and that he is entitled to retain it in view of his readiness and willingness to proceed with the employment. The recommendation herein, however, is not based on a finding of any breach of duty in that respect, but is based on findings that the allegations of the petitioner's answer and the facts set out therein and attempted to be supported by evidence adduced on behalf of the petitioner are untrue, and that the allegations of the complaint are true. In other words, the action of the board of governors was not based on a determination of the reasonableness of an attorney's fee, but upon a determination of whether the petitioner had wrongfully appropriated to his own use the money of his client. As so based the conclusions of the

board are amply supported by the record and we would not be justified in arriving at a contrary conclusion.

As to the charge that the petitioner was guilty of reprehensible conduct in connection with the proposed initiation of proceedings to recall Judge Wood, little need be said. The primary step to be taken in that regard was the sending out of a letter to members of the bar of Los Angeles County to obtain the sentiment of the attorneys as to the advisability of such action. The recommendation of the board is not based on the impropriety of such movement, but is based on the extremely questionable methods employed to bring it about. It was deemed necessary by those furthering the movement to have some attorney sign the letter sponsoring the inquiry to be sent out to the attorneys. The petitioner lent himself to the plan of paying an attorney the sum of $500 for his signature to such a letter, the money to be furnished by a defendant in a criminal case then pending before Judge Wood. The letter was sent out to numerous members of the bar purporting to have been signed by an attorney, who immediately announced publicly that his name was appended to the letter without authority and proved to the satisfaction of the Board of Governors that such was the fact. The petitioner also disclaimed any knowledge or responsibility in connection with attaching the name of said attorney to the letter. The petitioner, however, admitted before the board that his action in connection with the methods employed to initiate the proceedings was improper. On the record he is certainly entitled to the censure recommended by the board for his action in that matter. The approval of the recommendation which is hereby given will constitute the reprimand.

It is further ordered that the petitioner, Louis F. D'Elia, Jr., be and he is hereby suspended from practice as an attorney at law of this state for the period of one year from and after the date of the filing of this order.